IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

*FILED IN CHAMBERS*
*U.S.D.C. - Atlanta*

*OCT 7 2009*

*JAMES N. HATTEN, Clerk*
*By:*
*Deputy Clerk*

IMAGELINE, INC.,

        Plaintiff

v.

FOTOLIA LLC and
JOHN DOES 1-10,

        Defendants

CIVIL ACTION NO.
1:09-CV-1091-ODE

## ORDER

This civil copyright infringement case comes before the Court on Defendant Fotolia LLC's ("Fotolia's") Motion to Dismiss or Transfer Venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) [Doc. #6]. Plaintiff Imageline, Inc. ("Imageline") has filed a response in opposition to the motion [Doc. #7], and Fotolia has replied [Doc. #11]. For the following reasons, Fotolia's motion to dismiss Imageline's complaint for lack of personal jurisdiction is GRANTED, and Fotolia's motion to transfer venue is thus DENIED AS MOOT.

I.   Burdens of Proof

On a motion to dismiss for lack of personal jurisdiction, Imageline, "as the plaintiff, has the burden of establishing a prima facie case of personal jurisdiction." Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006) (citing Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268-69 (11th Cir. 2002)); Goforit Entm't LLC v. Digimedia.com L.P., 513 F. Supp. 2d 1325, 1328 (M.D. Fla. 2007). See also Oldfield v. Pueblo de Bahia Lora, S.A., 558 F.3d 1210,

1217 (11th Cir. 2009) ("It goes without saying that, where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present."). "A prima facie case [of personal jurisdiction] is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." Stubbs, 447 F.3d at 1360 (citing Meier, 288 F.3d at 1269).

"Where . . . the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." Id. To the extent that Fotolia's affidavits conflict with Imageline's complaint and any supporting documentary evidence, the Court must construe all reasonable inferences in Imageline's favor. Id.

With these burdens of proof in mind, the Court will assess the background of this case based on Imageline's complaint and the documents filed in support and opposition of the motion to dismiss, taking all reasonable inferences in Imageline's favor should conflicts between the parties' assertions arise.

II.   Procedural and Factual Background

Imageline brought the instant action asserting that it holds valid copyrights to numerous "original digital illustrations and designs" and alleging that Fotolia "reproduced, distributed, and/or created derivative works" of those illustrations[1]  which

---

[1] To its complaint Imageline attached several pages showing these "original digital illustrations and designs" and comparing

were then "reproduced and distributed on and through [Fotolia's] website located at the internet domain name, www.fotolia.com, among other places, without authorization" [Doc. #1 at ¶¶ 8, 15].[2] Imageline also asserted causes of action against Fotolia for providing false copyright management information, removing or altering copyright management information, committing contributory copyright infringement, and for vicarious liability based on others' acts of copyright infringement [Doc. #1 at ¶¶ 25-41].

In the complaint, Imageline, a Virginia corporation, asserted that Fotolia "is a company formed in Delaware with headquarters located" in New York [Doc. #1 at ¶ 5]. Imageline also asserted that Fotolia "may be served through its registered agent" in Delaware [Doc. #1 at ¶ 5]. Finally, Imageline asserted that "[t]his Court has personal jurisdiction over Defendant Fotolia by

them to the infringing "derivative works" allegedly found on Fotolia's website [Doc. #1 at 17-45].

[2] Imageline's complaint also alleged that, upon information and belief, "each of [the John Doe] Defendants was in some manner negligent, grossly negligent, guilty of willful and wanton conduct, and proximately caused Imageline's damages" [Doc. #1 at ¶ 7]. The Court presumes that, by suing these unnamed defendants, Imageline seeks to litigate against users of Fotolia's website who created and posted the allegedly-infringing "derivative works" found on Fotolia's website, and not merely Fotolia itself for providing its users with accounts and hosting the images online.

Nowhere in the record does Imageline argue that the Court may exercise personal jurisdiction over these unnamed defendants or indicate what contacts, if any, these defendants have had with the forum state of Georgia. The Court notes that such arguments would likely be futile, as "fictitious party practice is not permitted in federal court." New v. Sports & Recreation, Inc., 114 F.3d 1092, 1094 n.1 (11th Cir. 1997).

virtue of its transacting, doing, and soliciting business in [the Northern District of Georgia]" [Doc. #1 at ¶ 2]. Nothing on the face of the "Facts" section of Imageline's complaint indicated any connection between the allegations against Fotolia and either the Northern District of Georgia, specifically, or the State of Georgia as a whole [Doc. #1 at ¶¶ 8-13].

In its motion to dismiss, Fotolia contends that "this Court does not have personal jurisdiction over Fotolia" because "neither the parties nor the facts alleged in [Imageline's] complaint bear any relation to the Northern District of Georgia" [Doc. #6 at 1].

In support of its motion, Fotolia submitted the affidavit of Chad Bridwell, Fotolia's director of U.S. operations [Doc. #6-2 at 28-35]. Bridwell asserted that Fotolia

> provides an online marketplace for its users
> to upload, download and license stock images
> through its website, fotolia.com. Fotolia
> users are the source for the images posted on
> the fotolia.com website and Fotolia provides
> a forum for its uploading users, who own the
> images, and its downloading users, who wish
> to license those images.

[Doc. #6-2 at 28-29].[3]

---

[3] Notably, Bridwell did not assert that Fotolia charges a fee to all individuals who wish to become "users" of the website's services. The affidavit and exhibits submitted by Evan A. Andersen ("Andersen"), Imageline's attorney, detailing the steps he took to register an account on www.fotolia.com, without having to pay a registration or user fee, indicate that no such fees are required for basic Fotolia accounts [See Doc. #7-2 at 7 (screen shot of Fotolia's website with words "Create a FREE account")].

The only apparent commercial interaction between Fotolia and its users involves the issuance of "credits" via the website. Imageline asserts that "Fotolia's customers purchase products either by subscription for a certain length of time or via credits, with a minimum purchase of 10 credits, each one of which

In terms of corporate citizenship, Bridwell stated that Fotolia "is a privately owned Delaware limited liability company, with its main corporate address in New York, New York," though Fotolia "also has employees in Seattle, Washington" [Doc. #6-2 at 28]. According to Bridwell, "Fotolia is registered to do business in Delaware and New York," while it "maintains its bank accounts in New York and its United States employees are located in New York, New York and Seattle, Washington" [Doc. #6-2 at 29]. Bridwell also stated that Fotolia:

- does not pay taxes in Georgia;
- does not maintain a mailing address or telephone listing in Georgia;
- does not own or lease any property in Georgia;
- holds no licenses from governmental agencies in Georgia;
- owes no financial debts to residents of Georgia;
- does not maintain bank accounts or other financial accounts in Georgia;
- does not and has never maintained an office in Georgia;

---

represents a future purchase and continuous relationship with Georgia" [Doc. #7 at 7]. Though Andersen "reviewed the 'Buy Credits' page of www.fotolia.com," he apparently did not purchase any credits while located in the Northern District of Georgia, instead registering only for a free Fotolia account [Doc. #7-2 at 3-4]. More importantly, Imageline has not presented facts indicating that Fotolia users in Georgia have purchased any credits from Fotolia's website or shown any other significant commercial activity between Fotolia and Georgia residents. To the extent that Fotolia has interacted with the forum state of Georgia via its Georgia-based website users, the Court must presume that such interaction has occurred by way of those users unilaterally accessing the site (and their accounts) without entering into any significant commercial, "credits-based" transactions with Fotolia.

- does not and has never hired any employees in Georgia;
- is not registered to do business in Georgia;
- does not have an agent for service of process in Georgia;
- has not targeted any national advertisements to Georgia residents;
- has not targeted any direct-mail advertising to Georgia residents; and
- has not targeted its website or online services to Georgia or its residents.

[Doc. #6-2 at 30-31].

Bridwell acknowledged some contacts between Fotolia and Georgia. For instance, in 2005 Fotolia e-mailed Showcase, Inc., a Georgia corporation, about a proposed sponsorship agreement, but never received a response [Doc. #6-2 at 31]. In December 2005, Fotolia placed a digital "banner advertisement" on the website www.freelancedesigners.com, and in January 2006 that website sent two e-mail advertisements concerning Fotolia to its users [Doc. #6-2 at 30-31]. A Georgia corporation, Vexcom, Inc. ("Vexcom"), operated the website www.freelancedesigners.com, but Fotolia targeted none of the e-mail advertisements sent via the website to Georgia residents [Doc. #6-2 at 31]. In 2007, Fotolia contacted www.freelancedesigners.com, which Vexcom still operated, about new Application Programming Interface software ("API") featured on Fotolia's website [Doc. #6-2 at 32].[4] Fotolia and Vexcom agreed

---

[4] According to Bridwell, API "permits a qualified Fotolia user to query the fotolia.com image bank and display the results

6

that Vexcom would promote API, but despite sporadic communications, Vexcom has not performed under the agreement or generated any revenue for Fotolia [Doc. #6-2 at 32].

According to Bridwell, when Imageline filed its complaint, Fotolia had 173,604 registered users in the United States, 3,370—or 1.9%—of whom lived in Georgia [Doc. #6-2 at 31]. Of those 3,370 Georgia users, 1,706—less than one percent of Fotolia's user total nationwide—maintained "active" accounts, to or from which they had uploaded or downloaded at least one digital image [Doc. #6-2 at 31]. At the time, the total revenue derived by Fotolia from Georgia users amounted to less than one percent of Fotolia's total United States revenue since its inception in 2005 [Doc. #6-2 at 32]. Of the approximately 200 API users registered in the United States, six had provided Fotolia with Georgia addresses [Doc. #6-2 at 32]. Of those six Georgia-based API users, only one was active, generating revenue for Fotolia of approximately sixteen dollars [Doc. #6-2 at 32].

According to Bridwell, Fotolia located some of the allegedly-infringing "derivative works" on its servers [Doc. #6-2 at 34]. Fotolia concluded that none of those works had been downloaded by Georgia residents to their Fotolia accounts or personal computers [Doc. #6-2 at 34]. In addition, Fotolia reviewed the images downloaded by its Georgia users in the six months prior to

---

on his or her own website, to build applications that interact with the fotolia.com website, or to sell images from the fotolia.com image bank as part of an end product (such as a website template)" [Doc. #6-2 at 29]. Nothing in Fotolia's brief supporting its motion to dismiss or Bridwell's affidavit indicates what a Fotolia user must do to become "qualified" to use API.

Imageline filing its complaint [Doc. #6-2 at 34]. Fotolia concluded that none of the images downloaded by those users in that time period were the allegedly-infringing "derivative works" that Imageline listed in its complaint [Doc. #6-2 at 34].

Fotolia also supported its motion to dismiss by attaching a copy of the "Terms and Conditions of Use" shown to users of www.fotolia.com [Doc. #6-2 at 37-41]. This document governs all Fotolia users' "use of the Fotolia.com website, including, without limitation, the uploading and downloading of photographs, illustrations, images or other pictorial or graphic works . . . onto or from the Fotolia.com website" [Doc. #6-2 at 37]. Fotolia's terms of use specify that it

> shall be governed by and construed in
> accordance with the laws of the State of New
> York, without regard to any conflict of law
> principles. Any legal action, suit or
> proceeding arising out of or relating to this
> Agreement shall be instituted in a court of
> competent subject matter jurisdiction in the
> federal or state courts of the State of New
> York, and [the user] and Fotolia each submit
> to the personal jurisdiction of such court
> and waive any right each might otherwise have
> to claim lack of personal jurisdiction or
> inconvenience of forum.

[Doc. #6-2 at 40].

In its brief in opposition to Fotolia's motion to dismiss, Imageline did not contradict Bridwell's factual assertions or the applicability of the "Terms and Conditions of Use" copied from www.fotolia.com and attached to Fotolia's motion. Instead, Imageline used the contacts between Fotolia and Georgia conceded by Bridwell to argue that this Court possesses both general and specific personal jurisdiction over Fotolia.

8

To its brief Imageline attached Andersen's sworn declaration [Doc. #7-2]. Andersen asserted that, on or about July 7, 2009, he accessed www.fotolia.com while in the Northern District of Georgia and registered a personal account on the website [Doc. #7-2 at ¶¶ 3-6]. Based on Andersen's ability to register an account with Fotolia, Imageline asserted that "Fotolia repeatedly and consciously chose to process Georgia residents' applications and to assign them accounts and passwords" and that Fotolia "knew that the result of these contracts would be the transmission of electronic services and products into Georgia, and the interaction with Georgia residents" [Doc. #7 at 5-6].

III. Discussion

"The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis by the federal courts." Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990) (citing Alexander Proudfoot Co. World Headquarters v. Thayer, 877 F.2d 912, 919 (11th Cir. 1989)). Courts must first "examine the jurisdictional issue under the state long-arm statute." Id. Then, courts must "ascertain whether or not sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (internal quotations omitted). "Only if both prongs of the analysis are satisfied may a federal . . . court exercise personal jurisdiction over a nonresident defendant." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

A.   The Georgia Long-Arm Statute

9

Imageline asserts that the Court "has personal jurisdiction over Defendant Fotolia by virtue of its transacting, doing, and soliciting business in [the Northern District of Georgia]" [Doc. #1 at ¶ 2]. The Georgia long-arm statute provides for the exercise of personal jurisdiction by state courts over a nonresident who "[t]ransacts any business within this state." O.C.G.A. § 9-10-91(1). In addition, "[t]he Georgia long-arm statute confers personal jurisdiction over nonresidents to the maximum extent permitted by due process." HTP Sp. Z O.O. v. Nissho Corp., 538 S.E.2d 525, 527 (Ga. Ct. App. 2000). See also Nippon Credit Bank, Ltd. v. Matthews, 291 F.3d 738, 746 (11th Cir. 2002). Because Georgia's long-arm statute is thus coextensive with the constitutional requirements of due process, "the state law and due process analyses collapse into a single inquiry." Butler v. Beer Across America, 83 F. Supp. 2d 1261, 1266 (N.D. Ala. 2000).

B.    Due Process

"The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Oldfield, 558 F.3d at 1220 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). A nonresident defendant's contacts with a forum state may give rise to either "general" or "specific" personal jurisdiction. See Helicopteros, 466 U.S. at 414 nn.8 & 9.

However, regardless of the "general" or "specific" nature of a nonresident defendant's contacts with a forum state, "it is essential in each case that there be some act by which the

10

defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Personal jurisdiction over a nonresident defendant does not exist based on "random, fortuitous, or attenuated contacts . . . or because of the unilateral activity of a third person." Madara, 916 F.2d at 1516 (internal citations omitted). See also Hanson, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

"Once it has been decided that a defendant purposefully established minimum contacts with the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)). Such "fairness factors" may include the burden on the defendant of litigating in the foreign forum, the interests of the forum state in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the judicial system's interest in obtaining the most efficient resolution of controversies, and the states' shared interest in furthering substantive social policies. Id. at 477 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). "In summary, only if the forum state's laws permit jurisdiction over the nonresident defendant and both prongs of the due process inquiry are satisfied may that defendant constitutionally be haled

11

into the forum state's courts." <u>Butler</u>, 83 F. Supp. 2d at 1265.

As Imageline asserts that Fotolia's contacts with Georgia are sufficient to establish both "general" and "specific" personal jurisdiction over Fotolia in this case, the Court will assess each of these types of personal jurisdiction in turn.

### 1.   General Personal Jurisdiction

The term "general jurisdiction" "refers to the power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose." <u>Oldfield</u>, 558 F.3d at 1221 n.27 (citing <u>Burger King</u>, 471 U.S. at 473 n.15; <u>Meier</u>, 288 F.3d at 1274). "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." <u>Consol. Dev. Corp. v. Sherritt, Inc.</u>, 216 F.3d 1286, 1292 (11th Cir. 2000) (citing <u>Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.</u>, 786 F.2d 1055, 1057 (11th Cir. 1996)). <u>See also</u> <u>Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.</u>, 207 F.3d 1351, 1357 (11th Cir. 2000) ("Of course, a court may summon a nonresident to answer claims unrelated to his contacts with the forum so long as those contacts are substantial, persistent, continuous and systematic.") (citing <u>Helicopteros</u>, 466 U.S. at 414 nn.8 & 9).

The Court concludes that Fotolia has not engaged in sufficiently systematic and continuous conduct with the forum state of Georgia for general personal jurisdiction to exist in this case. In general, "courts have been reluctant to find general jurisdiction based on internet contacts only, even in those cases

12

where the websites are highly interactive." <u>Nationwide Contractor Audit Serv., Inc. v. Nat'l Compliance Mgmt. Servs., Inc.</u>, 622 F. Supp. 2d 276, 292 (W.D. Pa. 2008). This case does not present facts that lead the Court to depart from the reluctance of federal courts to find general personal jurisdiction solely based on Internet contacts.

To support its argument that general jurisdiction exists over Fotolia, Imageline points to the contacts that Fotolia had with Georgia corporations Showcase, Inc. and Vexcom and the active Georgia-based users of www.fotolia.com and API, as well as the revenue that Fotolia has earned therefrom. These contacts, Imageline argues, make "the very nature of [Fotolia's] business . . . systematic and continuous" [Doc. #7 at 7].

The Court disagrees, finding that the <u>Butler</u> decision provides a relevant analogue to this case. There, the defendant, an Illinois corporation, made beer available for purchase on the Internet. <u>Butler</u>, 83 F. Supp. 2d at 1263. The plaintiff's minor son purchased twelve bottles of beer from the defendant's website, and the defendant subsequently shipped that beer to the plaintiff's home in Alabama. <u>Id.</u> at 1264. The defendant's shipment of beer to the plaintiff's home, and the act of making that beer available to the plaintiff's son in Alabama via the defendant's website, were insufficient grounds for general personal jurisdiction to exist over the defendant in Alabama courts. <u>Id.</u> at 1266. Importantly, the plaintiff offered no

> competent evidence to seriously controvert
> the defendants' averments that they are not
> registered to do business in Alabama; that
> they own no property in the state; that they
> maintain no offices in the state; that they

> have no agents in Alabama; that their key
> personnel have never even visited the state;
> and that they do not place advertisement with
> Alabama media outlets (except for what
> nationally placed advertisements may reach
> the state) or engage in any other significant
> promotions targeting the state, which would
> rise to such a level as would justify an
> exercise of general jurisdiction by this
> state's courts.

Id. Because the Illinois corporate defendant asserted an uncontroverted lack of business activity in Alabama, general personal jurisdiction did not exist over that defendant in Alabama courts, notwithstanding the advertised sale of beer to Alabama residents via the defendant's website.[5]

In similar fashion, Imageline has provided no competent evidence—in fact, no evidence at all—to contradict the assertions in Bridwell's affidavit detailing the lack of business connections that Fotolia has with the State of Georgia. Fotolia's "random, fortuitous, [and] attenuated contacts" with the forum state in this case do not rise to the level of "systematic and continuous" contact with Georgia as to subject Fotolia to the general jurisdiction of Georgia courts. Imageline has not cited, and the Court's independent research has not uncovered, any cases holding that general personal jurisdiction exists over a website operator

---

[5]   See also Thomas v. Mitsubishi Motor N. Am., Inc., 436 F. Supp. 2d 1250, 1256 (M.D. Ala. 2006) ("[G]iven the lack of evidence regarding the quantity of internet contact by Alabama citizens, and in view of the Defendants' uncontroverted evidence, including but not limited to, that [Defendant] has no agent in Alabama, owns no property in the state, sells no cars in Alabama, has not delivered cars to Alabama, and does not advertise in Alabama, the court concludes that the contacts identified by Plaintiff are not sufficient to establish general personal jurisdiction over [Defendant] in Alabama.").

that makes a website available for worldwide consumption, has website users in a forum state, and sporadically contacts two residents of the forum state to pursue business opportunities, with varying levels of success.[6] Such a rule would render any company that makes a website available on the Internet, and sporadically contacts residents of a forum state, subject to suit in the courts of that state, even if the facts giving rise to the suit did not occur in the state. The Court declines to create such a rule in this case. For this reason, the Court concludes that it may not, consistent with due process, exercise general personal jurisdiction over Fotolia in this case.

### 2.   Specific Personal Jurisdiction

The term "specific jurisdiction" "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." Oldfield, 558 F.3d at 1221 n.27. "In a case involving specific jurisdiction, a defendant's contacts with the forum state must satisfy three criteria: they 'must be related to the plaintiff's cause of action or have given rise to it;' they must involve 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum;' and they 'must be such that the defendant should

---

[6] In fact, to the contrary, "[g]eneral jurisdiction has been found lacking even where a company had employees, agencies and salespeople regularly in the forum; where the company was qualified to do business in the forum; and where it regularly solicited business and derived more than 26% of its income in the forum." Assoc. Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A., 197 F.3d 1070, 1075 (11th Cir. 1999) (citing Noonan v. Winston Co., 135 F.3d 85, 93-94 (1st Cir. 1998); Nichols v. G.D. Searle Co., 991 F.2d 1195, 1198 (4th Cir. 1993)).

15

reasonably anticipate being haled into court there.'" <u>Sloss Indus.</u>
<u>Corp. v. Eurisol</u>, 488 F.3d 922, 925 (11th Cir. 2007) (quoting
<u>McGow v. McCurry</u>, 412 F.3d 1207, 1214 (11th Cir. 2005)). The Court
will assess these three criteria for establishing specific
personal jurisdiction in turn.

a.   <u>Relatedness</u>

As to the first criterion, the Court concludes that
Imageline's claims are neither related to, nor arise out of,
Fotolia's contacts with Georgia. Though Fotolia acknowledges that
some of its active users reside in Georgia, Imageline does not
claim that any of those users uploaded any of the allegedly-
infringing "derivative works" to Fotolia's website or downloaded
those works to their personal accounts or computers. In addition,
Fotolia performed a manual review of the file transfers conducted
by its active Georgia-based users during the time immediately
prior to Imageline filing its complaint, the results of which
Imageline has not contested, and concluded that none of the
allegedly-infringing "derivative works" were uploaded or
downloaded by its Georgia users during that time. Finally,
Imageline's claim clearly is not related to, and does not arise
out of, Fotolia's past contacts with Georgia corporations
Showcase, Inc. and Vexcom.

Imageline has not provided the Court with additional reasons
why this lawsuit relates to, or arises out of, Fotolia's contacts
with residents of Georgia. "The relatedness element demands a
closer and more substantial causal relationship between the
relevant contacts and the alleged tort than the relationship
presented here." <u>Oldfield</u>, 558 F.3d at 1224. Therefore, the Court

16

cannot conclude that Imageline's claims are related to, or arise out of, the contacts that Fotolia has had with Georgia.

### b.  Purposeful Availment

As to the second criterion, Imageline and Fotolia apply different tests to assert that Fotolia has, or has not, "purposefully availed" itself of the benefits of conducting business in Georgia. Imageline applies the "sliding scale" test formulated in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997),[7] while Fotolia argues that the Court should apply the "effects test" announced by the Supreme Court in Calder v. Jones, 465 U.S. 783 (1984), and applied to the Internet context by the Eleventh Circuit in Licciardello v. Lovelady, 544 F.3d 1280

---

[7] The Eleventh Circuit has not stated whether the Zippo "sliding scale" test applies in determining when specific jurisdiction exists over nonresident defendants that operate primarily on the Internet. See Oldfield, 558 F.3d at 1220 n.26 ("We have not directly addressed the issue presented in Zippo, which is whether a non-resident defendant electronically transmitting, or enabling the transmission of, information via the Internet subjects himself to the personal jurisdiction of the forum where plaintiff encountered electronic information . . . . Although we pause briefly to discuss the Zippo decision . . . we express no opinion as to its applicability to the case at hand."). At least one judge in this district has applied the Zippo test to resolve such a question. See Barton S. Co. v. Manhole Barrier Sys., Inc., 318 F. Supp. 2d 1174, 1177 (N.D. Ga. 2004) ("In discussing whether the MBS website provides the basis for personal jurisdiction, both parties rely upon Zippo . . . . In accordance with Zippo, the Court must examine the level of interactivity and commercial nature of the exchange of information that occurs on the MBS website."). In the same way, though the applicability of Zippo in this circuit is unclear, the Court will address the contentions that Imageline and Fotolia have made under the Zippo "sliding scale" test.

17

(11th Cir. 2008). The Court concludes that, regardless of which test it applies in this case, Fotolia has not "purposefully availed" itself of the privilege of doing business in Georgia.

The court in Zippo distinguished among three categories of websites and examined the jurisdictional implications of each:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Zippo, 952 F. Supp. at 1124 (internal citations omitted). Imageline asserts that "Fotolia's completely interactive website is more than adequate to support jurisdiction over Fotolia by this Court" [Doc. #7 at 12].

The Court agrees that, under the Zippo framework, Fotolia's website is not merely a "passive" one where Fotolia posts information for others to access. Instead, users of Fotolia's website can interact with Fotolia's host computers by uploading

18

pictures to their accounts hosted at www.fotolia.com, by downloading images that others have uploaded, by using API, and by paying for some services offered by Fotolia. Therefore, the Court concludes that the Fotolia website falls into the "middle ground" of interactive websites as defined by the court in Zippo and will assess the "level of interactivity and commercial nature of the exchange of information that occurs" on Fotolia's website to determine whether Fotolia has "purposefully availed" itself, through its website, of the privilege of conducting business in Georgia. Id.

The Court concludes that the "commercial nature" of Fotolia's website with regard to its limited use by Georgia residents does not establish that Fotolia "purposefully availed" itself of the privilege of doing business in Georgia. In Zippo, the defendant had, by way of its website, "*sold* passwords to approximately 3,000 subscribers in Pennsylvania and entered into seven contracts with Internet access providers to furnish its services to their *customers* in Pennsylvania." Id. at 1126 (emphases added). These customers and service providers directly paid the defendant for access to its online news service, and messages sent via that service allegedly infringed on the plaintiff's trademarks. Id. The court concluded that the defendant had consciously "chosen . . . to sell its services to Pennsylvania residents" and had thus "purposefully availed" itself of the privilege of doing business in Pennsylvania. Id. at 1127.

Fotolia's website, as accessed by Georgia residents, does not reach the same level of commercial activity as the defendant's website in Zippo. Imageline has not asserted that Georgia

residents engaged in a level of commercial contact with Fotolia remotely close to the extensive online commercial interaction between the Pennsylvania residents and the defendant in Zippo. In addition, none of Fotolia's contacts with Georgia indicate that Fotolia targeted its services or advertisements to residents of the state. Therefore, even though Fotolia's website is somewhat "interactive" as defined by the Zippo framework, the low "level of commercial activity" between Fotolia and residents of Georgia indicates that Fotolia has not "purposefully availed" itself of the privileges and benefits of doing business in this state.

Applying the "effects test" announced in Calder does not lead this Court to a different result. Under Calder, a nonresident defendant "purposefully avails" itself of the privilege of conducting business in a particular forum if that defendant "(1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." Oldfield, 558 F.3d at 1220 n.28 (citing Calder, 465 U.S. at 789-90).

The Eleventh Circuit has applied the Calder "effects test" in considering whether a nonresident website operator that allegedly committed trademark infringement was subject to specific personal jurisdiction in Florida courts. See Licciardello, 544 F.3d at 1287-88 ("Lovelady is alleged to have committed an intentional tort against Carman—using his trademarked name and his picture on a website accessible in Florida in a manner to imply Carman's endorsement of Lovelady and his products. The use was not negligent, but intentional . . . . These allegations satisfy the Calder effects test for personal jurisdiction—the commission of an

intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum.").

Fotolia's alleged copyright infringement in this case, if taken as an intentional tort in the vein of the trademark infringement alleged in Licciardello, does not satisfy the Calder "effects test" or indicate that Fotolia "purposefully availed" itself of the privilege of doing business in Georgia. For instance, nothing indicates that any intentional misconduct by Fotolia was either "directly aimed at the forum" of Georgia or caused "an injury within the forum that [Fotolia] should have reasonably anticipated." Oldfield, 558 F.3d at 1220 n.28. Instead, any injury caused by Fotolia's alleged copyright infringement would have occurred in Virginia, the state of Imageline's incorporation. Imageline does not assert any connection between damages caused by Fotolia's alleged infringement and the State of Georgia, and the "effects" of any illegal behavior by Fotolia were not felt in this state. For these reasons, the Calder "effects test" indicates that Fotolia has not "purposefully availed" itself of the privilege of doing business in Georgia, and thus cannot serve as the basis for asserting specific jurisdiction over Fotolia in this case.

c.    Reasonable Anticipation

As to the third criterion, the Court concludes that Fotolia could not have reasonably anticipated being haled into Georgia courts as a result of hosting users' images on its website. Though an uncontroverted lack of business activity in Georgia indicates that Fotolia could not reasonably anticipate being haled into Georgia courts, the Court concludes that the "Terms and Conditions

of Use" presented to users of Fotolia's website provide the strongest proof that Fotolia could not anticipate being forced to defend itself against Imageline's copyright infringement claims asserted in that forum.

As indicated above, the terms governing the use of Fotolia's website provide for exclusive jurisdiction "in the federal or state courts of the State of New York" [Doc. #6-2 at 40]. Other courts have interpreted website operators' use of such "click-wrap agreements" as indications that a given website operator could not reasonably anticipate being haled into court elsewhere. See, e.g., Instabook Corp. v. InstantPublisher.com, 469 F. Supp. 2d 1120, 1126 (M.D. Fla. 2006) ("Even courts that have followed the Zippo 'sliding scale' analysis have endorsed the use of [click-wrap] agreements as a means for website-operating defendants to limit their amenability to suit in foreign jurisdictions."); Tech Heads, Inc. v. Desktop Serv. Ctr., Inc., 105 F. Supp. 2d 1142, 1152 (D. Or. 2000) ("Lest personal jurisdiction in cases such as this be mistaken for over-reaching, those conducting business over the Internet can protect themselves with . . . an interactive agreement that includes a choice of venue clause to which a consumer or client must agree before purchasing any products or receiving any services."); Stomp, Inc. v. NeatO, LLC, 61 F. Supp. 2d 1074, 1080-81 & n.11 (C.D. Cal. 1999) (noting that click-wrap agreements permit website operators to "limit the jurisdictions to which they may be haled into court").

The Court concludes that, in addition to the other factors indicating that Fotolia did not specifically target residents of Georgia with its business model or advertising and did not conduct

22

a significant quantity of business in Georgia, the "Terms and Conditions of Use" made available at www.fotolia.com also indicate that Fotolia could not reasonably anticipate being haled into Georgia courts to defend itself against Imageline's allegations. For these reasons, the Court finds that it may not exercise specific personal jurisdiction over Fotolia consistent with the constitutional guarantee of due process of law.

### 3. "Fairness Factors"

In addition to not having sufficient "minimum contacts" with Georgia as to render Fotolia subject to suit here, the Court concludes that none of the "fairness factors" listed by the Supreme Court in World-Wide Volkswagen support the exercise of personal jurisdiction over Fotolia in this case. For instance, Imageline has not indicated to the Court what interest, if any, the State of Georgia has in adjudicating this copyright dispute between a Virginia corporation and a Delaware corporation with its headquarters in New York, with no injury suffered by Imageline in Georgia itself. In addition, though plaintiffs typically have an interest in obtaining "convenient and effective relief," Imageline has not indicated why bringing suit against Fotolia in Georgia would provide Imageline with such relief should Imageline prevail.

The Court also notes that "the difficulties of geography still impose a not insubstantial burden on a defendant seeking to mount an effective defense against a potentially substantial claim in a remote jurisdiction to which that party has no real ties"—a burden that Fotolia would undoubtedly face if forced to defend itself in Georgia. Butler, 83 F. Supp. 2d at 1268 (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). Imageline asserts

23

that Fotolia's arguments challenging jurisdiction on fairness grounds are "one[s] of convenience for Defendant only, which [are] insufficient to meet [its] burden" [Doc. #7 at 15]. However, the "fairness factors" set forth in  World-Wide Volkswagen seek to preserve litigants' rights not to be sued in jurisdictions to which they have no substantial or relevant connections.   See Oldfield, 558 F.3d at 1221 ("A 'primary concern' of the 'fairness' test is the burden placed on the defendant . . . .") (citing World-Wide Volkswagen, 444 U.S. at 292). Where the burden placed on a nonresident defendant is a relevant factor in determining whether exercising personal jurisdiction would comport with due process, Fotolia's arguments regarding "convenience"—or, more precisely, "inconvenience"—are relevant assertions indeed.

### 4.   Summary

The Court concludes that Fotolia does not have the requisite "minimum contacts" with the forum state of Georgia to be subject to the personal jurisdiction of Georgia courts. In addition, the Court concludes that exercising personal jurisdiction over Fotolia in this case would contravene the "fairness factors" set forth by the Supreme Court to ensure that lawsuits brought against nonresident defendants do not violate those defendants' constitutional rights. Exercising either "general" or "specific" personal jurisdiction over Fotolia in this case would violate Fotolia's constitutional due process guarantee, and thus the Court must grant Fotolia's motion to dismiss the complaint against it for lack of personal jurisdiction.

## IV.  Conclusion

24

For the reasons stated above, Fotolia's motion to dismiss Imageline's complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) [Doc. #6] is GRANTED. Therefore, Fotolia's alternative motion to transfer venue pursuant to Rule 12(b)(3) is DENIED AS MOOT.

SO ORDERED, this __7__ day of October, 2009.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

25